IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:13-CV-594-FL

| | | |
|---|---|---|
| CHERRY HARGROVE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNIVERSE EXPRESS INC. MOVING AND STORAGE, | ) ) | |
| | ) | |
| Defendant. | ) | |

This matter came before the court today for hearing on plaintiff's motion for temporary restraining order and preliminary injunction, (DE 7), renewed August 22, 2013. At hearing this date, the court granted plaintiff's motion for preliminary injunction, and this order sets forth pertinent background, findings of fact, and conclusions of law in support of the court's decision.

**BACKGROUND**

Plaintiff filed this action on August 19, 2013, seeking to proceed in forma pauperis, and moving for temporary restraining order and preliminary injunction, asserting defendant is liable to plaintiff for injunctive relief and damages under a contract for interstate carriage of household goods from New Jersey to North Carolina. Plaintiff asserted that defendant had stated to her an intent to sell or dispose plaintiff's household goods currently in defendant's possession at auction or otherwise without notice within twenty-one (21) days.

On August 20, 2013, the court granted plaintiff's motion to proceed in forma pauperis, directed the clerk to separately file the complaint and the motion for temporary restraining order and preliminary injunction, and entered temporary restraining order restricting defendant from selling or disposing at auction or otherwise any and all of plaintiff's household goods that

currently are being held in possession of defendant.  The court directed the clerk to have the U.S. Marshal to serve summons, complaint with exhibits, the court's order, and the motion for preliminary injunction with affidavit and proposed order as therein defined on the defendant and to promptly make return of service on the court's docket in advance of September 3, 2013, hearing.  The court denied without prejudice to renewal the motion for preliminary injunction. The court directed plaintiff to file and serve on defendant by August 26, 2013, a motion for preliminary injunction in conformity with the rules and motion practice in this district.  The court set hearing on the motion for September 3, 2013.

On August 22, 2013, plaintiff filed a motion for temporary restraining order and motion for preliminary injunction, repeating the substantive claims and allegations asserted in the papers initially filed by plaintiff, but with signatures on the motion and memorandum in support. Plaintiff paid the security bond as directed by the court.

On August 27, 2013, the court entered an order noting that plaintiff had not filed a certificate of service stating that service of the motion was made upon the defendant, as required by the court's order and by Federal Rule of Civil Procedure 5.  Plaintiff filed on August 30, 2013, a letter explaining service efforts made to date, including efforts to obtain service on an agent for service as well as efforts to confirm service of by the U.S. Marshal.

With respect to plaintiff's efforts to serve papers on defendant's designated agent in North Carolina, plaintiff stated that per information from the U.S. Department of Transportation, defendant's designated agent for service was "Colleen Girard, at 209 Cook Road, Cesar, North Carolina, 28202." (DE 11 p. 1).  However, when the Sheriff attempted service to the designated

2

agent, as plaintiff requested, the designated agent "stated that she knew nothing about this company." (Id. p. 2). According to plaintiff, the Sheriff stated "he had tried to serve her with a similar summons last year, but [Ms. Girard] also stated at that time that someone was attempting to use her name and that she knew nothing about the company." (Id.). Upon providing this information to the U.S. Department of Transportation, said agency notified plaintiff "that it was a violation for any moving company not to have a designated agent in the states that they operated and that it would be reported." (Id.).

Return of service filed September 3, 2013, demonstrates that the U.S. Marshal served defendant on August 27, 2013, with the summons, the complaint with exhibits, the court's August 20, 2013, temporary restraining order, and the initial preliminary injunction motion papers. After receipt of service of temporary restraining order on August 27, 2013, defendant sent to plaintiff on August 30, 2013, a bill for storage costs totaling $928.48, with reference to 17 days between August and September, 2013, which threatened disposal of plaintiff's goods if not timely paid. (DE 19, Pl's Ex. 1).

On September 3, 2013, the court held a hearing on the motion for temporary restraining order and for preliminary injunction, wherein plaintiff tendered further exhibits and statements regarding the facts of the case. Defendant did not appear at the hearing. The court extended the temporary restraining order and set the matter for hearing on plaintiff's motion for preliminary injunction for September 17, 2013, at 1:00 p.m., and directed defendant to show cause why it should not be in contempt. Court directed the clerk to serve on defendant 1) notice of September

3

17, 2013, hearing, 2) plaintiff's preliminary injunction motion, and 3) the court's September 3, 2013, order.

Per return of service filed September 16, 2013, on September 13, 2013, the U.S. Marshal served the above-designated papers on Ms. Nicole Patrick ("Office Manager") at address of Universe Express Inc. Moving and Storage.

Approximately ten minutes before the scheduled 1:00 p.m. hearing today, the clerk's office received a call from an individual, David Tider, who reportedly stated that he represented defendant and that he wished to participate by telephone in the scheduled hearing and submit evidence to the court at hearing. Before the hearing commenced, the clerk's office connected Mr. Tider telephonically into the courtroom.

Upon commencement of hearing today, the court noted on the record the presence of plaintiff in the courtroom, the absence of defendant, and the clerk's notice that approximately ten minutes before hearing of receipt of call from Mr. Tider. The court invited Mr. Tider to identify himself and to confirm his stated representation in this matter. Upon inquiry whether Mr. Tider was admitted to practice in this court, Mr. Tider stated that he was admitted to practice in New Jersey but not in any other state. The court asked Mr. Tider whether he was aware that the court does not accept phone calls from attorneys desiring to participate in hearings or at trials in the manner in which he has presented himself. Mr. Tider affirmed this would be normal protocol, but noted that his client did not inform him of the proceeding until yesterday and provide him with paperwork until this morning. Mr. Tider continued in attempt to flag issue of a rider, asserted as pertaining to the merits of the case.

4

The court asked Mr. Tider if he was aware of the requirements for appearance to practice in this court, including the requirement to obtain local counsel, and the requirement to enter an appearance in accordance with the rules of this court. The court asked Mr. Tider if he understood these pre-requisites for representing defendant before the court in this matter. Mr. Tider stated that he presumed such requirements to be the case, and Mr. Tider again attempted to inform the case regarding agreements between the parties to the case and characterizations of such agreements pertaining to the merits of the case. Whereupon, the court again admonished Mr. Tider to cease further making argument in contravention of stated rules and procedures.

With respect to the timing of his telephone call to the court in advance of hearing, Mr. Tider repeated again that he had been contacted by his client yesterday concerning representation in this matter, and that his client had provided him with documentation just this morning regarding this case. The court admonished Mr. Tider that the purpose of the instant exchange was only to clarify administratively the status of his representation, and that defendant bore the burden of its delay in securing representation where it had been served with the court's temporary restraining order on August 27, 2013, but had taken no action since yesterday to secure representation. The court affirmed to Mr. Tider that he would not be permitted to make argument on behalf of defendant at the hearing today, and that he must follow the requirements in the rules of this court before doing so in the future. The court invited Mr. Tider to listen to the hearing telephonically, and to only participate in asking questions of the court when asked. Mr. Tider stated that he understood.

5

Thereupon the court proceeded to address plaintiff's motion for preliminary injunction, concluding for the reasons stated below, that good cause existed for granting a preliminary injunction enjoining defendant from disposing of plaintiff's household goods. The court noted that the preliminary injunction order will be served on defendant by mail at the address where service previously had been completed. The court invited defendant to appear in the future in accordance with the rules of the court to present any argument with respect to the case.

The court then asked Mr. Tider whether he had any questions limited only to administrative matters and not going to the merits of the case. In response to the court's invitation for questions, Mr. Tider stated he had two questions. As his first question, Mr. Tider again proceeded to make statements unrelated to administrative matters and instead directly pertaining to the merits of the court's ruling today. In particular, Mr. Tider asked the court whether it had considered in its ruling certain contract documents, suggesting that these would serve as demonstration of lack of merit in plaintiff's case. The court reminded Mr. Tider of its instruction to limit questions to administrative matters, and asked Mr. Tider to proceed with his second administrative question. As his second question, Mr. Tider again raised a matter on the merits of the case, specifically whether this court is authorized to hear this case in light of provisions in the contract and rider thereto. The court again admonished Mr. Tider that he was digressing into argument in contravention of the court's instructions. Thus the court concluded the hearing.

## DISCUSSION

A. Preliminary Injunction Standard

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary and drastic remedy," Munaf v. Geren, 553 U.S. 674 (2008), which "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22; see Dewhurst v. Century Aluminum Co., 649 F.3d 287, 290 (4th Cir. 2011).

In an order granting a preliminary injunction, the court must make "specific findings of fact and conclusions of law" and on appeal such factual findings "shall not be set aside unless clearly erroneous." Scotts Co. v. United Indus. Corp., 315 F.3d 264, 274 (4th Cir. 2002) (citing Rule 52(a)). With respect to findings of fact and conclusions of law, a preliminary injunction is decided "on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981). "A party thus is not required to prove his case in full at a preliminary-injunction hearing," and the findings of fact and conclusions of law made by a court in ruling on a preliminary injunction are not binding at trial on the merits. See id.

7

B. Findings of Fact

1. Preliminary considerations regarding posture of the case

The court notes several preliminary considerations regarding the current posture of the case, bearing upon the scope of relief granted and the reasons for such relief:

a. The scope of injunctive relief sought in plaintiff's preliminary injunction motion is narrow: Plaintiff requests an injunction preventing defendant from selling or disposing at auction or otherwise her household goods being held by defendant; Plaintiff also seeks an injunction preventing loss and damage of household goods in defendant's possession. (DE 7, p. 3).

b. The narrowness of the injunctive relief sought contributes to a finding that the balance of the equities and public interest are served by entry of an injunction in this case.

c. As noted at hearing today, defendant has not appeared in this case, and the manner in which defendant attempted to interject into the present proceedings, despite not having complied with the court's rules for representation in this district and entry of appearance, is troubling.

d. The court finds as a fact that defendant's conduct after having been served on August 27, 2013, with this court's first temporary restraining order, including defendant's act in sending plaintiff an invoice for storage fees threatening disposal of plaintiff's household goods in direct contravention of the court's first temporary restraining order, contributes to a finding of likelihood of risk of harm to plaintiff's unique household goods absent the present injunction, and also contributes to a finding that the balance of the equities and the public interest favors an injunction.

e. Defendant's act in designating as agent for service of process in this state an individual who "stated that she knew nothing about this company," contributes to a finding of likelihood of risk of harm to plaintiff's unique household goods absent the present injunction, and also contributes to a finding that the balance of the equities and the public interest favors an injunction.

f. It is in the interest of equity and the public interest that defendant bear the present burden of an injunction on defendant, if any, where defendant received notice of the court's first temporary restraining order on August 27, 2013.

2. Findings of facts regarding the parties' agreements

a. On June 28, 2013, defendant emailed plaintiff an estimate for moving household goods from New Jersey to North Carolina, stating in the subject line of the email "$1098 Complete Service to North Carolina"; stating in the body of the email: "We can perform your move on July 12th at a special rate listed below. You also have the flexibility to reserve on July 13th also at this rate"; including a table captioned: "Estimate" "Number:A615741," predicated on estimated volume of 248 cubic feet, weighing 1,736 pounds, at $4.07 per cubic foot; providing "Total Estimate Cost: $1,098.18," and "Price Includes," "Complete Door to Door," and "Storage for 30 days in our secure & private, climate-controlled warehouse facility." (Pl's Hrg. Ex. 3).

b. Plaintiff responded to the estimate noting that her budget is $ 950-975. (Compl. Ex. 1).

9

c. Plaintiff affixed an electronic signature to a second estimate dated July 8, 2013, "Estimate Number A615741," which states estimated volume 300 cubic feet, weighing 2,100 pounds, at $4.07 per cubic feet. (Compl. Ex. 2).

d. A July 8, 2013, Relocation Quote, as part of this estimate, states: Total Estimate Cost: $1,348.00, providing the same terms as the July 8, 2013, estimate. (Compl. Ex. 2(c)). Terms include payment and pricing policy. (Id. Ex. 2(d)). As part of this estimate, on July 8, 2013, plaintiff signed electronically a List of Articles - "Volume Amount 300 cft."

e. Plaintiff understood this July 8, 2013, estimate to be binding on defendant, and upon electronic signature by her, a binding contract, with balance due upon receipt of goods, absent further agreement by the parties of a change in terms.

f. Plaintiff asked her son to be present at the New Jersey location where her household goods were to be picked up. On or about July 8, 2013, plaintiff emailed her son directions for handling the move, including that a payment of $539.00 would be necessary at time of move. (Pl's Ex. 2).

g. A bill of lading in the case record, dated July 13, 2013, states a balance due as $5008.4[]. (Compl. Ex. 3). This bill of lading is followed by materials and packing services order form, and household goods descriptive inventory.

h. On July 13, 2013, Aaron Hargrove signed a List of Articles "Volume Amount 300 cft." (Compl. Ex. 3(g)). This list of articles is consistent with the July 8, 2013, estimate, and did not involve a change of terms in the contract.

10

i. On July 19, 2013, defendant sent plaintiff an email attaching a copy of an interstate delivery form, which plaintiff completed, designating date for receipt of shipment as July 29, 2013. (Compl. Ex. 5(a)-(b)).

j. On August 13, 15, and 16, 2013, plaintiff demanded pickup of her goods (Compl. Ex. 6(a)-(c). Defendant responded that "All further communication will be directly with the Better Business Bureau." (Compl. Ex. 6(d)).

k. Plaintiff did not waive any right to be present at load weighing. No weight was provided in furtherance of defendant's claim to funds in excess of $5,000.00.

l. When Plaintiff's son met one of defendant's representatives on July 13, no agreement was reached altering the terms of the original July 8, 2013, binding estimate and agreement.

m. Plaintiff's son was not authorized to make any decisions regarding the price of the move.

n. On July 13, 2013, plaintiff's son understood that he was only signing an acknowledgement that plaintiff's items had been placed on the moving truck.

o. Defendant sent to plaintiff bill for storage costs totaling $928.48, with reference to 17 days between August and September, 2013. This invoice was sent by email from defendant to plaintiff on August 30, 2013. It threatens disposal of plaintiff's goods if not timely paid. (Pl's Ex. 1).

p. Plaintiff has established risk of loss of her "nonprofit culinary library books and supplies." (DE 7, p. 3). In her complaint, plaintiff's states concern with loss of "expensive

11

medicine" prescribed by her personal physician. (DE 4, p. 18). The court finds as a fact that plaintiff's household goods include those of a unique, perishable nature.

    B.  Conclusions of Law

        1. Likelihood of success on the merits

  a.   Plaintiff's suit is premised on federal statutes and regulations governing liability of carriers for damages incurred in interstate shipment of goods.

  b.   49 U.S.C. § 14706 provides:

> (a) General liability.--
> (1) Motor carriers and freight forwarders.--A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier . . . .
>
> \*    \*    \*
>
> (d) Civil actions.--
> (1) Against delivering carrier.--A civil action under this section may be brought against a delivering carrier in a district court of the United States or in a State court. Trial, if the action is brought in a district court of the United States is in a judicial district, and if in a State court, is in a State through which the defendant carrier operates.
> (2) Against carrier responsible for loss.--A civil action under this section may be brought against the carrier alleged to have caused the loss or damage, in the judicial district in which such loss or damage is alleged to have occurred.
> (3) Jurisdiction of courts.--A civil action under this section may be brought in a United States district court or in a State court.

49 U.S.C. § 14706.

c. Section 14706(a)(1), also known as the Carmack Amendment, "was enacted in 1906 as an amendment to the Interstate Commerce Act of 1887." Ward v. Allied Van Lines, Inc., 231 F.3d 135, 138 (4th Cir.2000), and it codified the common law of carriers, making a carrier liable "for the actual loss or injury to the property" it transports. 49 U.S.C. § 14706(a)(1); Ward, 231 F.3d at 138; Rankin v. Allstate Ins. Co., 336 F.3d 8, 9 (1st Cir.2003) (Carmack imposes near strict liability upon carriers). Carmack's effect is to "create a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading." Id. (quoting Shao v. Link Cargo (Taiwan) Ltd., 986 F.2d 700, 704 (4th Cir.1993)); 5K Logistics, Inc. v. Daily Express, Inc., 659 F.3d 331, 335 (4th Cir.2011) (Carmack's national scheme strikes "a precise balance between the rights of shippers and carriers").

d. "An action for damages lies under the Carmack Amendment where goods are not transported with reasonable dispatch." Yakubu v. Atlas Van Lines, 351 F. Supp. 2d 482, 489 (W.D. Va. 2004) (quoting Southeastern Express Co. v. Pastime Amusement Co., 299 U.S. 28, 29, 57 S.Ct. 73, 81 L.Ed. 20 (1936) (citing New York, Philadelphia & Norfolk Railroad v. Pennsylvania Produce Exchange, 240 U.S. 34, 38–39, 36 S.Ct. 230, 60 L.Ed. 511 (1916)) ("The statute thus applies to damages caused by delay in making delivery."); Richter v. North American Van Lines, Inc., 110 F.Supp.2d 406, 412–13 (D.Md.2000) ("[A]lthough the Carmack Amendment refers to compensation for 'loss or damage' to goods, it also allows recovery for unreasonable delay in the delivery of goods, even if not lost or damaged.").

e. A binding estimate must be clearly indicated as such on its face. 49 C.F.R. § 375.403(a)(3). A binding estimate must clearly describe the shipment and the services provided.

13

49 C.F.R. § 375.403(a)(4). If it appears that an individual shipper has tendered additional goods or requires additional services that were not identified in the binding estimate, the carrier is not required to honor the estimate. 49 C.F.R. § 375.403(a)(5). A carrier who services the new shipment must (i) reconfirm the binding estimate, (ii) negotiate a revised binding estimate or (ii) agree with the shipper in writing that the original estimate was not binding. Id. Once the shipment is loaded, a carrier who fails to comply with the items noted above may not collect more than the original binding estimate. 49 C.F.R. § 375.403(a)(6).

 f. A non-binding estimate must provide a reasonably accurate estimate of the weight or volume of the shipment and services. 49 C.F.R. § 375.405(b)(1). The non-binding estimate must be clearly indicated as such on its face. 49 C.F.R. § 375.405(b)(5). A non-binding estimate must clearly describe the shipment and the services provided. 49 C.F.R. § 375.405(b)(6). If it appears that an individual shipper has tendered additional goods or requires additional services that were not identified in the non-binding estimate, the carrier is not required to honor the estimate. 49 C.F.R. § 375.405(b)(7). A carrier who services the new shipment must (i) reconfirm the binding estimate or (ii) negotiate a revised binding estimate. Id. Once the shipment is loaded, a carrier who fails to comply with the items noted above has reconfirmed the original non-binding estimate. 49 C.F.R. § 375.405(b)(8).

 g. Plaintiff has demonstrated a likelihood of success on her claims under 49 U.S.C. § 14706 and related regulations.

 h. Where defendant has not delivered plaintiff's property to date, defendant is liable for the actual loss or injury to the property it transported on behalf of plaintiff. 49 U.S.C. §

14

14706(a)(1); Ward, 231 F.3d at 138; Rankin v. Allstate Ins. Co., 336 F.3d 8, 9 (1st Cir.2003) (Carmack imposes near strict liability upon carriers).

    i. Defendant is also liable to plaintiff for damages where the goods were not transported with reasonable dispatch. See Yakubu v. Atlas Van Lines, 351 F. Supp. 2d 482, 489 (W.D. Va. 2004) (quoting Southeastern Express Co. v. Pastime Amusement Co., 299 U.S. 28, 29, 57 S.Ct. 73, 81 L.Ed. 20 (1936) (citing New York, Philadelphia & Norfolk Railroad v. Pennsylvania Produce Exchange, 240 U.S. 34, 38–39, 36 S.Ct. 230, 60 L.Ed. 511 (1916)) ("The statute thus applies to damages caused by delay in making delivery."); Richter v. North American Van Lines, Inc., 110 F.Supp.2d 406, 412–13 (D.Md.2000) ("[A]lthough the Carmack Amendment refers to compensation for 'loss or damage' to goods, it also allows recovery for unreasonable delay in the delivery of goods, even if not lost or damaged.").

    j. Once plaintiff's shipment was loaded, defendant failed to comply with the regulatory requirements regarding binding estimates, and thus may not collect more than the original binding estimate, in this case $1,348.00, for the shipment of plaintiff's goods. 49 C.F.R. § 375.403(a)(5)-(6).

    k. Defendant may not collect storage costs from plaintiff, where defendant has incurred storage costs due to its refusal to deliver goods as required per the terms of the original estimate.

    2. Plaintiff's irreparable harm

    a. Where defendant initially threatened to dispose of plaintiff's household goods if full demanded payment was not received, and where defendant renewed its threat to dispose of plaintiff's household goods, after receiving service of this court's temporary restraining order,

15

plaintiff has established a likelihood of irreparable harm if a preliminary injunction is not entered restraining defendant from disposing of plaintiff's household goods.

b. Plaintiff has established risk of loss of her "nonprofit culinary library books and supplies." (DE 7, p. 3). In her complaint, plaintiff's states concern with loss of "expensive medicine" prescribed by her personal physician. (DE 4, p. 18). The court finds that because plaintiff's household goods include those of a unique, perishable, nature, this heightens the risk of irreparable loss or damage to some or all of plaintiff's household goods if an injunction is not maintained.

### 3. Balance of equities and public interest

a. Defendant will not be irreparably harmed by an injunction requiring it to maintain the status quo and continue to be restrained from selling or disposing at auction or otherwise any and all of plaintiff's household goods that currently are being held in possession of defendant.

b. Where plaintiff has presented evidence supporting a likelihood of success on the merits and where the defendant has not appeared to provide argument or documentation in support of its defense, despite having received notice on August 27, 2013, of the court's first temporary restraining order, and despite having received notice on September 13, 2013, of the court's second temporary restraining order and hearing on preliminary injunction, the balance of the equities and public interest, supports extending the same preliminary injunctive relief imposed in the court's temporary restraining orders.

c. In sum, the court finds today good cause for entry of a preliminary injunction.

CONCLUSION

Based on the foregoing, plaintiff's motion for preliminary injunction (DE 7) is GRANTED. Defendant is restrained from selling or disposing at auction or otherwise any and all of plaintiff's household goods that currently are being held in possession of defendant.

SO ORDERED, this the 17th day of September, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge